1   CRAIG P. FAGAN, State Bar No. 149556
    **LAW OFFICES OF CRAIG P. FAGAN**
2   6320 Raydel Court
    San Diego, CA 92120
3   Telephone: (619) 528-9600
    Facsimile:  (619) 528-9675
4   email: cpfagan@faganlegal.com

5   Attorneys for all Plaintiffs

6

7                       UNITED STATES DISTRICT COURT

8                      CENTRAL DISTRICT OF CALIFORNIA

9

10

11  PATRICIA CHAPPELLE, an individual; )     No. 2:16cv07827-DSF-SS
    DONYEISHA WHITEBEAR, an individual; )
    K.F., a minor by and through his general )  **PLAINTIFFS' OPPOSITION TO**
12  guardian DONYEISHA WHITEBEAR; G.J. )        **MOTION TO DISMISS FILED BY**
    a minor by and through her guardian ad litem, )  **D E F E N D A N T   H O U S I N G**
13  DONYEISHA WHITEBEAR,              )          **AUTHORITY OF THE CITY OF LOS**
                                      )          **ANGELES**
14       Plaintiffs,                  )
                                      )          _____
15    v.                              )
                                      )          Date:       June 26, 2017
16  JOHN E. HUGHES, Individually, and JOHN )    Time:       1:30 p.m.
    E. HUGHES, TRUSTOR AND/OR )                 Ctroom:     7D
17  TRUSTEE, OF THE JOHN E. HUGHES )            Judge:      Dale S. Fischer
    TRUST, DATED JUNE 2, 1995; HOUSING )
18  AUTHORITY OF THE CITY OF LOS )             _____
    ANGELES (HACLA), a California state )
19  chartered public agency charged with )
    providing fair housing in the City of Los )
20  Angeles, DOES 1 through 10, Inclusive, )
                                      )
21       Defendants                   )
                                      )
22  _____ )

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3    TABLE OF CONTENTS.................................................................................................  i

4    TABLE OF AUTHORITIES ........................................................................................  ii

5    I.    DEFENDANT HAS ENGAGED IN CONDUCT THAT VIOLATES THE STATE

6          AND FEDERAL FAIR HOUSING LAWS AND, THEREFORE, CAN BE HELD

7          ACCOUNTABLE ................................................................................................  1

8          a.    HACLA Does Not Have to Be an Owner of the Property to Be Liable

9                for Housing Discrimination ....................................................................  1

10         b.    HACLA's Actions Resulted in Plaintiffs Losing Their Housing ..........  3

11         c.    HACLA's Published Statements Violated 42 U.S.C. §3604(c) .............  6

12   II.   HACLA ERRONEOUSLY CONCLUDES THAT PLAINTIFFS HAD AN

13         OBLIGATION  TO EXHAUST ADMINISTRATIVE REMEDIES ...............  7

14   III.  THE CALIFORNIA TORT CLAIMS ACT DOES NOT BAR THE CURRENT

15         ACTION ...............................................................................................................  8

16

17   4.    CONCLUSION.................................................................................................  11

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

**CASES**

4

5   *Antonio v. Security Services of America, LLC*, 701 F.Supp.2d 749 (D.Md.2010) .............................. 1

6   *Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Tp.*, 996 F.Supp. 409, 433

7   (D.N.J.1998) ...................................................................................................... 7

8   *Fair Housing Congress v. Weber,* 993 F.Supp. 1288, 1290 (C.D. Cal. 1997) ..................................... 6

9   *Mathews v. Arrow Wood LLC,* 2009 WL 8659593 (C.D. CA. 2009) ..................................................... 6-7

10  *Meyer v. Holley*, 123 S.Ct. 824, 828 (U.S. 2003) .............................................................. 7

11  *Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1360 (2000) ................................. 9

12  *Pack v. Washington II*, 689 F.Supp. 1237, 1245 (E.D. Cal. 2009) ........................................... 6

13  *Ragin v. New York Times Co.*, 923 F.2d 995, 1002 (2d Cir. 1991) ...................................... 6

14  *The Committee Concerning Community Improvement v. City of Modesto*,

15  583 F.3d 690 (9th. Cir. 2009) ............................................................................ 3

16  *United States v. Space Hunters, Inc.*, 429 F.3d 416 (2nd Cir.  2005) ...................................... 1

17  *Ward v. Harte*, 794 F.Supp. 109, 113 (S.D.N.Y. 1992) ......................................................... 7

18  *Watson v. Department of Rehabilitation*, 212 Cal App 3d 1271 (1989) .............................. 9

19  *Williams v. Horvath* (1976) 16 Cal 3d 834, 842 (1976) ....................................................... 8

20

21

**FEDERAL STATUTES**

22  42 U.S.C. § 3604 ........................................................................................................ 1,3

23  42 U.S.C. § 3604(c) ................................................................................................ 1,6

24  42 USC §3612(a) .................................................................................................. 7

25  42 U.S.C. §§ 3613(a)(2) ........................................................................................ 7

26

**STATE STATUTES**

27  CA Govt. Code §815 .............................................................................................. 9

28

CA Govt Code §12980 ................................................................................................ 7,10

CA Gov. Code §12955 ................................................................................................ page 3, fn 1

I.      **DEFENDANT HAS ENGAGED IN CONDUCT THAT VIOLATES THE STATE AND FEDERAL FAIR HOUSING LAWS AND, THEREFORE, CAN BE HELD ACCOUNTABLE**

The Housing Authority of Los Angeles (HACLA) has proffered several reasons to excuse its conduct. As will be shown below, none of these defenses would justify excusing HACLA from this case.

a.      **HACLA Does Not Have to Be an Owner of the Property to Be Liable for Housing Discrimination**

HACLA erroneously concludes that it must be an owner of the subject property to be liable.  This is an incorrect assertion.

In *United States v. Space Hunters, Inc.*, 429 F.3d 416 (2nd Cir. 2005), the court held that 42 U.S.C. § 3604(c) did not solely apply to owners and their agents because the statute's plain language applied broadly to any notice, statement, or advertisement, with respect to sale or rental of dwelling that indicated discriminatory preference on prohibited grounds.  The Court held:

"Nothing in this language limits the statute's reach to owners or agents or to statements that directly effect a housing transaction. Indeed, this language "does not provide any specific exemptions or designate the persons covered, but rather . . . applies on its face to anyone" who makes prohibited statements. United States v. Hunter, 459 F.2d 205, 210 (4th Cir. 1972) (internal quotation marks omitted); see also Ragin v. N.Y. Times Co., 923 F.2d 995, 999 (2d Cir. 1991) ("Congress used broad language in [section 804(c), and there is no cogent reason to narrow the meaning of that language."). *Id.* at 424.

In *Antonio v. Security Services of America, LLC*, 701 F.Supp.2d 749 (D.Md.2010),  the court rejected the claim that 42 U.S.C. §3604 only applied to owners.  In *Antonio*, the court found that the

Federal Fair Housing Act (FHA) provision, which made it unlawful to "coerce, intimidate, threaten, or interfere" with any person's housing based on race, applied to African-American homebuyers' suit against allegedly racially motivated arsonists, who destroyed homes while working as security guards at housing development; even though security guards were not "landlords," since their intimidating and destructive actions made housing "unavailable" to purchasers, so the action fell under FHA provision.  The court held, "Additionally, non-landlords are liable under the FHA and such entities that "make housing unavailable," through such activities as intimidation, have been found to violate the FHA in the Fourth Circuit. See *Williams v. Poretsky Mgmt.*, 955 F.Supp. 490, 495 (D.Md.1996)."

Consequently, in *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690 (9th. Cir. 2009), the court expressly held that the Fair Housing Act covers "post-acquisition" discrimination. *Id.* at 713 ("For the reasons that follow, we conclude that the FHA reaches post-acquisition discrimination").   The Court held:

> "The statute prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). The inclusion of the word "privileges" implicates continuing rights, such as the privilege of quiet enjoyment of the dwelling. While defendants argue that "the provision of services or facilities in connection therewith" refers only to services or facilities provided at the moment of acquisition in connection with the sale or the rental, this is hardly a necessary reading. There are few "services or facilities" provided at the moment of sale, but there are many "services or facilities" provided to the dwelling associated with the occupancy of the dwelling. Under this natural reading, the reach of the statute encompasses claims regarding services or facilities perceived to be wanting after the owner or tenant has acquired possession of the dwelling." *Id.* at 713.

In short, nothing within 42 U.S.C. §3604 suggests that its provisions apply solely to owners of

1    property.[1]

2

3    **b.      HACLA's Actions Resulted in Plaintiffs Losing Their Housing**

4

5          HACLA was not an indifferent bystander to this transaction. It's involvement, as well as its failure

6    to act, resulted in Plaintiffs losing their housing.

7          The purpose of 42 U.S.C. §3604 was to change the way housing providers communicated with the

8    public. "Congress was aware that [Title VIII] would have a very broad reach, and indeed the legislation

9    was seen as an attempt to alter the whole character of the housing market."[2] Congress sought to eliminate

10   *all* indications of preference, limitation, and discrimination based upon protected class status. Indeed, the

11   Supreme Court has stated that the Fair Housing Act is to be construed generously to ensure the prompt and

12   effective elimination of *all* traces of discrimination in the housing field.[3]

13         Herein, HACLA was directly involved in the negotiation for the rental of a property: it had the

14   ability to provide for housing assistance under Section 8, or to deny it. The first amended complaint

15   specifically alleges that Plaintiffs went to HACLA, and informed HACLA that a newborn baby would need

16   to be added to the lease [FAC ¶13]. HACLA's representative, Claudia Chavez, informed Plaintiffs that,

17   _____

18         [1]California's Fair Employment and Housing Act ("FEHA"), which is codified at Cal. Gov. Code
     §12955 et seq., is substantially equivalent to the Fair Housing Act. *Anderson v. Foley*, 1999 CAFEHC
19   LEXIS 5, 25-26 (1999). As such, only the Fair Housing Act will be addressed herein. In short, if
     defendants' actions violate the federal Fair Housing Act, then, by definition, they also violate California's
20   FEHA. "FEHA in the housing area is thus intended to conform to the general requirements of federal
     law in the area and may provide greater protection against discrimination." *Brown v. Smith,* 55
21   Cal.App.45h 767, 780 (1997); *cf., Inland Mediation Board v. City of Pomona*, 158 F.Supp.2d 1120, 1150
     (C.D. Cal. 2001) ("Generally, California explicitly prohibits its fair housing laws from being construed to
22   provide fewer rights or remedies than the FHA and its implementing regulations.").

23
         [2]*Mayers v. Ridley*, 465 F.2d 630, 652 (D.D.C. 1972); *Housing Rights Center v. Donald Sterling*
24   *Corp.*, Case No. CV-03-859-AHM-(Ex) (C.D. Cal. 2003) *11, Loislaw Federal District Court Opinions
     ("The Fair Housing Act must be interpreted broadly to effectuate its purposes").
25
         [3]*Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211-212, 93 S.Ct. at 367-368 (1972).
26   *See, also, Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979);
     *Holley v. Crank*, 386 F.3d 1248, 1256 (9th Cir. 2004); *Balvage v. Ryderwood Improvement,* 642 F.3d
27   765, 769 (9th Cir. 2011).

28

1   "It's up to the landlord to accept another person.  They don't have to accept another person in the house."

2   [FAC ¶13] Plaintiff Patricia Chappelle was upset, and said, "This is a baby that was born.  Are you trying

3   to limit how many people can live here?"  Ms. Chavez responded by saying, "It's up to the landlord."

4   [FAC ¶13].

5          The first question is whether HACLA had a duty to intervene.  Seeing that HACLA is entrusted

6   by the State of California with assisting individuals with fair housing accommodations and housing

7   assisted subsidies, there can be little dispute that their duty was not fulfilled in this case.   Quite the

8   contrary: Not only did HACLA fail to fulfill its duties, it actually committed an act of intimidation when

9   it subsequently accused Plaintiffs of committing "fraud" for bringing their newborn baby home [FAC ¶14].

10  The implication of this accusation is that Plaintiffs were violating federal laws by using fraudulent means

11  to obtain Section 8 housing assistance.  This accusation ultimately caused Plaintiffs to move [FAC ¶15].

12  Without question, such an allegation was intimidating and in violation of fair housing laws.

13         Putting aside the fact that HACLA facilitated the owner's discriminatory conduct, the next question

14  is whether HACLA committed its own, separate, act of discrimination.  The pleaded facts support such a

15  claim.  HACLA's response to Plaintiff's request to bring their baby home was "The landlord just doesn't

16  want her there." [FAC ¶13].  On its face, this statement by HACLA showed a preference against Plaintiffs

17  based upon familial status, as it was supporting the owner's discriminatory position.  Moreover, HACLA

18  subsequently exacerbated the situation by sending a written notice to Plaintiffs that they had committed

19  "fraud" by having an "unauthorized tenant" living in their unit [FAC ¶14].   It's hard to conceive of how

20  a mother giving birth to a child and wanting to bring the child home was an act of "fraud," yet that is

21  precisely what HACLA accused Plaintiffs of doing.  Upon receiving this notice, Ms. Chappelle called

22  HACLA, incredulous that she was being accused of fraud for having a newborn baby in the house [FAC

23  ¶14].   Ms. Chavez responded by stating that "the Landlord says that she can't be there" [FAC ¶14].  In

24  response, Ms. Chappelle stated, ""I don't remember anywhere in the lease that says they can restrict

25  children. Also, we still have enough people per bedroom.  Why won't he let her come?" [FAC ¶14]  Ms.

26  Chavez responded, "The landlord just doesn't want her there" [FAC ¶14].

27         Without question, HACLA has engaged in conduct that caused Plaintiffs to lose their housing, as

28

1   well has made discriminatory statements:  HACLA was accusing Plaintiffs of fraud for Plaintiff Donyeisha

2   Whitebear bringing her newborn baby home from the hospital, and was supporting the owner's

3   discriminatory policies.  HACLA's involvement, as well as their acquiescence to the landlord's demands,

4   clearly resulted in discriminatory conduct.  Due to this,  Plaintiffs lost their housing [FAC ¶15].

5          HACLA improperly suggests that, by offering Plaintiffs another property, this somehow undid the

6   fact that it engaged in discriminatory conduct.  If a person has their wallet stolen, the thievery does not

7   cease to exist simply because the thief later apologizes and offers to provide a replacement wallet to the

8   victim.   Plaintiffs had their home of 12 years taken from them [FAC ¶9].  They did not want to move, yet

9   HACLA forced them into that position. First, HACLA informed Plaintiffs that if the owner "did not

10  approve" of a baby living there, they'd have to move [FAC ¶13].  This is no different than if HACLA had

11  informed Plaintiffs that the owner did not approve of an African-American tenant.  The regulations issued

12  by the Department of Housing and Urban Development implementing the 1988 amendments to the Fair

13  Housing Act make clear that Congress intended to give families with children the same protections that

14  had been provided since the Act's adoption in 1968 to individuals on the basis of race:

15

16          "[T]he legislative history of the Fair Housing Act and the development of

17          fair housing law . . . support the position that . . . families with children

18          must be provided the same protections as other classes of persons. . . .  For

19          example, "dual housing" facilities segregated by race . . .  would violate the

20          . . . Act.  Similarly, . . . it is unlawful for a housing facility to segregate

21          because of familial status.[4]

22

23       In short, HACLA's discriminatory conduct, as well as its support for the owner's discriminatory

24  policies, resulted in Plaintiffs suffering an injury.

25

26

27

           [4]24 C.F.R. Ch. 1, Subch. A., App. I at 691 (1991); *see also id.* at 714.

28

**c.       HACLA's Published Statements Violated 42 U.S.C. §3604(c)**

Next, HACLA violated 42 U.S.C. §3604(c) by publishing discriminatory statements that violated applicable fair housing laws.   42 U.S.C. §3604(c), which makes it unlawful:

"To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status, . . . or an intention to make any such preference, limitation, or discrimination."

HACLA's printed statement that Plaintiffs were committing "fraud" by having an "unauthorized tenant" in their house  was a statement which directly violated 42 U.S.C. §3604(c), as it sought to prevent a child from living in the home.  Ms. Chavez's subsequent statement that " if the landlord did not approve, then Ms. Chappelle, Ms. Whitebear, and the two children would have to get a voucher and move out" [FAC §13] further supported the assertion that the printed statement about an "unauthorized tenant" related solely to Plaintiff's newborn baby.   Moreover, HACLA's affirmation of the owner's statement that "The landlord just doesn't want her there" [FAC ¶14] was another statement that expressed a preference against children, a violation of 42 U.S.C. ¶3604(c).

As such, HACLA has printed and spoken statements that "indicated a preference based upon family status"  - - a direct violation of 42 U.S.C. §3604(c).   Section 3604(c) claims do not undergo a burden-shifting analysis, nor do they require a showing of discriminatory intent.  *Pack v. Washington II*, 689 F.Supp. 1237, 1245 (E.D. Cal. 2009).  "Discriminatory preference, rather than an outright ban, is the basis for a §3604(c) violation." *Id.*   Under 3604(c), the question is whether the statement at issue would suggest an improper preference to "an ordinary reader or listener." *Id.*   The ordinary reader or listener "is neither the most suspicious nor the most insensitive of our citizenry." *Ragin v. New York Times Co.*, 923 F.2d 995, 1002 (2d Cir. 1991).   *Fair Housing Congress v. Weber,* 993 F.Supp. 1288, 1290 (C.D. Cal. 1997) (summary judgment granted as to discriminatory statements in rules and regulations). *Mathews v. Arrow*

*Wood LLC,* 2009 WL 8659593 (C.D. CA. 2009)(summary judgment granted as to discriminatory statements in rules and regulations).

As it stands, anyone who commits one of the acts proscribed by the Fair Housing Act is liable to suit. *Meyer v. Holley*, 123 S.Ct. 824, 828 (U.S. 2003)(noting that the Fair Housing Act "focuses on prohibited acts" and "says nothing about [defendants'] vicarious liability").

Herein, HACLA published and spoke discriminatory statements. It is liable for making such statements.

## II.   HACLA ERRONEOUSLY CONCLUDES THAT PLAINTIFFS HAD AN OBLIGATION TO EXHAUST ADMINISTRATIVE REMEDIES

HACLA has confused employment discrimination cases, with housing discrimination cases. There is no legal obligation for a victim of housing discrimination to exhaust administrative remedies before filing a lawsuit for housing discrimination.

Any party to a HUD or California Department of Fair Employment and Housing (DFEH) complaint may elect to have the claims decided in a civil action, rather than pursuing administrative remedies. CA. Govt Code §12980 makes the filing of a complaint with DFEH discretionary. See also 42 USC §3612(a). Simply put, there is no legal requirement that a party exhaust remedies before filing a lawsuit for housing discrimination. *Ward v. Harte*, 794 F.Supp. 109, 113 (S.D.N.Y. 1992) (" . . . the enforcement structure of the Fair Housing Act is significantly different from that of either Title VII or the ADEA: a plaintiff need not pursue any administrative remedies at all before filing a suit under the FHA"). *Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Tp.*, 996 F.Supp. 409, 433 (D.N.J.1998) ("The Planning Board claims that Plaintiffs have failed to exhaust administrative remedies . . . an FHA plaintiff has no obligation to pursue administrative remedies with the Department of Housing and Urban Development. See 42 U.S.C. §§ 3613(a)(2) ("an aggrieved person may commence a civil action under this subsection whether or not a complaint has been filed under section 3610 of this title and without regard to the status of any such complaint").

1    In short, Plaintiffs had no legal obligation to pursue administrative remedies before filing the

2    current action.

3

4    **III.    THE CALIFORNIA TORT CLAIMS ACT DOES NOT BAR THE CURRENT ACTION**

5

6          A housing discrimination claim is not governed by the California Tort Claims Act.

7          As to Plaintiffs' federal Fair Housing claims, the California Tort Claims Act does not govern it.

8    In *Williams v. Horvath* (1976) 16 Cal 3d 834, 842 (1976), the California Supreme Court held that the pre-

9    filing requirements of California's Tort Claims Act did not apply to federal civil rights claims.  The Court

10   held:

11

12         "Similarly, the California remedy of recourse to the Tort Claims Act need not be first sought before

13         a plaintiff is free to invoke the Civil Rights Act. While there may be considerable overlap between

14         the two statutes in given circumstances, the purposes underlying them are distinct. The state

15         scheme, as noted at the outset, was conceived to strictly limit governmental liability; the federal

16         legislation, by contrast,  was designed to ensure an adequate remedy for violations of civil rights.

17         The 100-day claim provision of section 911.2 is a condition precedent to the maintenance of an

18         action under state law . . . As aptly described in Illerbrun v. Conrad (1963) 216 Cal.App.2d 521,

19         524 [31 Cal.Rptr. 27], the filing of a claim for damages "is more than a procedural requirement,

20         it is a condition precedent to plaintiff's maintaining an action against defendants, in short, an

21         integral part of plaintiff's cause of action." And while it may be constitutionally permissible for the

22         Legislature to place this substantive impediment in the path of a state cause of action, it is clear that

23         the supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights

24         litigant.

25

26         "Accordingly, we hold that the claim provision of section 911.2 is inoperative in an action brought

27         under section 1983. Thus the fact that plaintiffs in the case at bar did not allege compliance with

28

1   this provision is irrelevant to their claim under the Civil Rights Act. As the trial court erroneously

2   sustained defendants' demurrer because of its belief that a claim within 100 days was necessary,

3   we conclude the judgment of dismissal must be reversed."

4

5   In short, Plaintiffs' federal civil rights claims are not governed by the California Tort Claims Act.

6   As to Plaintiffs' state civil rights claims, actions brought under California's Fair Employment and

7   Housing Act (FEHA), have been held exempt from the claim-presentation requirements of the general tort

8   claims act.  In *Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1360 (2000), the Court

9   held:

10

11   " In Garcia, supra, 173 Cal. App. 3d at pages 710-711, the court explained that actions brought

12   under FEHA have been held exempt from the claims presentation requirements of the general Tort

13   Claims Act."

14

15   Likewise, in *Watson v. Department of Rehabilitation*, 212 Cal App 3d 1271 (1989), the Court found

16   that an action for age and race discrimination under provisions of FEHA against a state agency by an

17   employee who had been denied promotion, was not barred by the broad tort immunity provided the state

18   by Govt. Code §815.  The Court rule that acts of state supervisorial employees ostensibly directed at other

19   employees in the normal course of the employment relationship, motivated by and resulting in

20   discrimination based on age and race, are not afforded such immunity. The *Watson* court held:

21

22   "We fail to understand why the State continues to urge on appeal as it did in the trial court

23   that Watson may not prevail because she has not exhausted her civil service administrative

24   remedies. She need not have done so as the State well knows because Watson had a choice

25   between her civil service remedies and those provided by The Fair Employment and

26   Housing Act. ( Gov. Code, § 12940 et seq.; State Personnel Bd. v. Fair Employment

27   Housing Com. (1985) 39 Cal.3d 422, 429, 431 [217 Cal.Rptr. 16, 703 P.2d 354].) She

28

OPPOSITION TO MOTION TO DISMISS                                                    9

1    chose to file her first charge with the DFEH and proceed accordingly. Watson complied

2    with the procedures required under the act, received her "right to sue" letter and timely filed

3    her suit. ( Commodore Home Systems, Inc. v. Superior Court, supra, (1982) 32 Cal.3d at

4    pp. 213-214, 217.) [*1285] Because the State Attorney General knows the law in this area,

5    we can only regard the argument as frivolous.

6

7         As noted above, since CA. Govt Code §12980 makes the filing of a complaint with DFEH

8    discretionary,  there is no requirement for a Plaintiff to obtain a "right to sue" letter before filing a FEHA

9    housing discrimination claim. As such, Plaintiffs had the right to bypass such a administrative requirement

10   when pursuing their FEHA claim, and directly file the current lawsuit.

11

12   * * *

13   * * *

14   * * *

15   * * *

16   * * *

17   * * *

18   * * *

19   * * *

20   * * *

21   * * *

22   * * *

23   * * *

24   * * *

25   * * *

26   * * *

27   * * *

28

OPPOSITION TO MOTION TO DISMISS                    10

**II.**

**CONCLUSION**

HACLA not only condoned the discriminatory conduct of the owner in this case, but also personally made discriminatory statements against Plaintiffs.   Plaintiffs were not required to exhaust administrative remedies before filing the current claim, so there is no basis to dismiss on these grounds. In short, there is no justification for dismissing HACLA from this case.   Accordingly, Defendant HACLA's motion to dismiss must be denied.

Dated: June 1, 2017                                    LAW OFFICES OF CRAIG P. FAGAN


                                                          By: **/s/Craig P. Fagan**
                                                          Craig P. Fagan
                                                          Attorneys for all Plaintiffs

1

2
PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF SAN DIEGO
3

4
I am, and was at the time of the service hereinafter mentioned, over the age of 18 and not a party to the within action.  My business address is 6320 Raydel Court, San Diego, California, and I am employed in San Diego County, California.

5

6
I served the enclosed **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT HOUSING AUTHORITY OF THE CITY OF LOS ANGELES**  on June 1, 2017, by serving via email and the Court's CM/ECF Filing System to the following:

7

8
Seth Kershaw
Meyers, McConnnell, Reisz & Siderman
11620 Wilshire Blvd, Suite #800

9
Los Angeles, CA 90025
kershaw@mmrs-law.com

10

11
Joseph L. Stark
Joseph L. Stark and Associates
25129 The Old Road, Suite 300

12
Stevenson Ranch, CA 91381
jls@legalkix.com

13

14
who is/are the person(s) on whom the document(s) was/were to be served in this action.

15
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

16

17

18
**/s/Craig P. Fagan**
Craig P. Fagan

19

20

21

22

23

24

25

26

27

28